# IN THE COURT OF APPEALS OF IOWA

No. 26-0337
Filed May 27, 2026

**In the Interest of C.W., Minor Child,**

**B.M., Mother,**
Appellant,

**J.W., Father,**
Appellant.

Appeal from the Iowa District Court for Black Hawk County,
The Honorable Michelle Jungers, Judge.

**AFFIRMED ON BOTH APPEALS**

Joseph G. Martin, Cedar Falls, attorney for appellant mother.

Thomas J. Richter of Beecher Law Firm, P.C., Waterloo,
attorney for appellant father.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General,
attorneys for appellee State.

Tammy L. Banning of Waterloo Juvenile Public Defender Office, Waterloo,
attorney and guardian ad litem for minor child.

Considered without oral argument
by Greer, P.J., and Buller and Langholz, JJ.
Opinion by Buller, J.

1

**BULLER, Judge.**

A mother appeals the termination of her parental rights to a child born in 2024. The father separately appeals. After considering the arguments properly presented in the petitions, we affirm on both appeals.

## BACKGROUND FACTS AND PROCEEDINGS

The child was born prematurely and immediately required physical and occupational therapy and the assistance of a feeding therapist to address developmental concerns. The Iowa Department of Health and Human Services (HHS) became involved after the mother tested positive for amphetamines just before giving birth. About a month-and-a-half later, the department learned the father fed the child solid foods that pose a significant choking hazard: chicken, grapes, and potato chips. The father said he wanted the child to experience the flavor of different foods. When HHS investigated, the father—then the sole caregiver present—was experiencing a schizophrenic episode and acting aggressively. The child was removed the same day.

A few days later, the child was set to return to the mother's care on the condition that the father not live in the same home or be the sole caretaker for the child at any time. But the mother informed HHS that the father was on the sex offender registry and their current housing was designated for only sex offenders, so the entire family would lose their housing if the father was forced to relocate. The mother also admitted to prenatal mental impairment with urges to harm the child in utero. Soon after, the child was adjudicated as a child in need of assistance (CINA). The child has not returned the either parent's custody since November 2024.

The parents live with a shared paramour. Following a housefire in May 2025, all three live in a shared motel suite. Because the parents reported the paramour would be a caretaker if the child returned home, HHS requested she cooperate with services and drug testing. But HHS grew concerned after the paramour continued to test positive for methamphetamine, demonstrated

controlling behavior over the parents, and self-disclosed attempting to murder her aunt. The department subsequently restricted the paramour from attending visits. Because of the continued concerns around the paramour's behavior, HHS informed the parents that they would not realistically reach reunification if they did not separate themselves from the paramour, which they did not do. In October, the parents promised HHS that the paramour would be sober by December, but no proof of the paramour's sobriety was provided to HHS.

Substance abuse is also a concern for both parents. While the father participated in substance-abuse counseling, he also tested positive for methamphetamine three times during the case, most recently about three months before the termination trial. Following his first positive test, the father denied use and instead explained that it was a false positive from either medication or his efforts to flush "someone's meth lab down a toilet." Over the length of the case, the father never admitted to using methamphetamine. He tested positive for marijuana regularly but obtained a medical marijuana card in March 2025. And he no-showed for about one third of his scheduled drug tests. As for the mother, she regularly tested positive for marijuana but acquired a medical marijuana card in May. HHS, however, was concerned that the mother's marijuana consumption was outside the scope medicinally permitted and problematic as a caregiver after she disclosed that she "smokes marijuana all day every day." The mother was arrested for possession of drug paraphernalia after a glass pipe with leaf-marijuana residue—not authorized by medical card—was discovered in her car during a traffic stop about a month before the termination trial.

A chronic concern throughout HHS's involvement has been the parents' inability to implement their parenting education, particularly safe feeding habits. On several occasions, HHS was repeatedly forced to intervene when the parents attempted to feed the child food that, as prepared, was a choking hazard, including hot dogs, brats, and hard chewy candies. The parents also generally struggled to appropriately care for a young child, often misunderstanding the child's cues or showing up to visits unprepared, as recently as a week before the hearing. A service

provider testified that, despite regularly redirecting the parents' problematic behavior, by the next visit the parents would regress. The parents never progressed past fully supervised visits. And the service provider testified that she believed the child would not be safe with the parents absent independent supervision.

The child has had the same fictive kin placement since November 2024. The child is bonded with the foster parents and their children. At the same time, an HHS worker observed that the child has a "disconnected bond" with the parents. As the case progressed, the child became increasingly reluctant to attend visits, often seeking out the service provider for comfort instead of the parents.

A termination trial was held in January 2026. The county attorney, HHS, the guardian ad litem (GAL), and the court-appointed special advocate all recommended termination of parental rights. The juvenile court terminated the mother's and father's parental rights under Iowa Code section 232.116(1)(h) and (i) (2025). Both parents appeal, and we review de novo. *See In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021).

## DISCUSSION

The mother and father both argue that the juvenile court should have granted an extension of time, should not have terminated their parental rights under section 232.116(1)(h) and (i), and should have found termination not in the best interests of the child. The father also argues that the court should have declined to terminate because of his close bond with the child. We consider each.

### I.    Additional Time

Both parents argue the juvenile court should have granted additional time to work toward permanency under Iowa Code section 232.104(2)(b). Each suggests they just need additional time to demonstrate to HHS that they are close to internalizing the parenting lessons provided. Both parents urge that we should consider the progress made as indicative of the future and the elimination of the need for removal. To grant an extension, the court must "enumerate the specific

factors, conditions, or expected behavioral changes" persuading the court the removal will no longer be necessary after six months. Iowa Code § 232.104(2)(b).

Despite more than a year of services after removal, both parents have made little progress toward resuming care, and we are far past the six-month statutory timeframe. *See In re L.A.*, 20 N.W.3d 529, 536 (Iowa Ct. App. 2025) (en banc) (collecting cases where "eleventh hour" efforts did not warrant an extension). Up to the week of the hearing, both parents continued to need instruction on proper food safety, despite regular reminders and interventions. The service provider testified that lessons were not being retained and she was concerned about the child's safety if the parents resumed care unsupervised.

The parents also continue to live in a hotel suite with their shared paramour, even though HHS designated the paramour an unsafe caregiver because of her history of substance abuse and concerning behavior. HHS previously informed both parents that continuing to live with the paramour would be a barrier to reunification, yet the parents continued that relationship. On appeal, the father contests the safety risk posed by the paramour. He urges that, because HHS discontinued services to the paramour six months before the hearing, the department cannot verify the paramour's sobriety. This does not change our analysis with respect to the safety risk posed by the parents and their inability to safeguard the child against threats posed by the paramour and others. The record offers no reason to believe the paramour is sober or less dangerous today than in the past.

The concerns involving each parent's ability to safely care for the child and their refusal to separate themselves from an unsafe caretaker are significant enough that we cannot conclude the need for removal would no longer exist in six months for this young child as to either parent.

## II.    Grounds for Termination

The father challenges the juvenile court's termination of his parental rights under section 232.116(1)(h) and (i). But, when a juvenile court terminates a

parent's rights on multiple grounds, we need only find one statutory ground supported by clear and convincing evidence to affirm. *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We focus on section 232.116(1)(h), and the only element the father challenges on appeal is whether the child could be safely returned to his custody as of the hearing. *See In re A.S.*, 906 N.W.2d 467, 473 (Iowa 2018). The father suggests that the barriers to reunification are "temporary" and "can be quickly addressed." Despite more than a year of services, the father still had not internalized instructions on proper feeding and general safe parenting. Visits never progressed beyond fully supervised, and the father required regular intervention by the service provider. He was still living in a motel with a paramour HHS determined was an unsafe caregiver. The father also recently tested positive for methamphetamine and never took responsibility for his substance abuse. On our de novo review, we agree with the juvenile court that the child could not be safely returned to the father at the time of the hearing.

As for the mother, her brief is devoid of argument against the presence of either statutory ground despite making the conclusory argument the grounds should be reversed. Even if we were to find the mother contested the statutory grounds, we would affirm this issue. As with the father, the mother continues to struggle with retaining basic childcare lessons despite more than a year of services. She also lives in a motel with an unsafe paramour that restricts her from resuming care. And her recent arrest and admission to HHS about smoking marijuana "all day, every day" raise concerns about her ability to be a safe caregiver.

### III. Best Interests

The father argues he "has the momentum and yearning to provide ongoing care for [the child]," and that "he can provide the best environment for the child's long-term nurturing and growth." And the mother urges she has been making slow progress and has shown "faithful" participation in services. Iowa Code section 232.116(2) requires the court to give "primary consideration" to the children's safety, long-term placement, and their "physical, mental, and emotional condition and needs." But the father has consistently failed to safely care for the

child, address his substance abuse, or create a nurturing space for the child free from safety concerns. And after more than a year, the mother still does not retain parenting skills and has shown no ability to provide the child a safe, stable home. The record overwhelmingly demonstrates that the child's safety, health, and stability are best served by termination. So we affirm the juvenile court's best-interests finding.

## IV.  Permissive Exception

The father contends he has a strong and positive bond with the child. But the father did not make this argument through testimony nor during closing argument below, and it is thus not preserved. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002); *In re W.T.*, 967 N.W.2d 315, 322 (Iowa 2021) (holding parents must prove exceptions to termination under section 232.116(3)). And even if this claim was preserved, it would fail on the merits. The child was described as having a "disconnected bond" with the parents and sought the comfort of a service provider over the parents when in distress during at least one visit. We see no evidence of a bond that would convince us by clear and convincing evidence that termination would be detrimental to the child on this record.

**AFFIRMED ON BOTH APPEALS.**